IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 JAN 13  PM 4: 19

DEPUTY CLERK

| | | |
|---|---|---|
| DEBORAH ANN EDWARDS,<br>Plaintiff, | §<br>§<br>§<br>§ | |
| v. | §<br>§<br>§ | Civil Action No.  4:14-CV-818-BL |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | §<br>§<br>§ | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Deborah Ann Edwards seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied her application for a period of disability (POD), Supplemental Security Income (SSI), and disability insurance benefits (DIB) under Titles II and XVI of the Social Security Act (Act). The United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this Court recommends the decision of the Commissioner be affirmed and this case be dismissed.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed her applications for benefits on April 14, 2008, alleging disability beginning on May 1, 2006.[1] Her applications were denied, so Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ). The ALJ found Plaintiff not disabled. Plaintiff appealed the ALJ's decision, and the Appeals Council remanded the case for

---

[1] At her first administrative hearing, Plaintiff amended her alleged onset date to April 14, 2003.

another administrative hearing. The second time, the ALJ found that because Plaintiff's age category had changed on October 29, 2010, as of that date, and continuing forward through the rest of this case, Plaintiff was disabled. However, the ALJ found that before October 29, 2010, Plaintiff was not disabled. In the case before the Court, then, Plaintiff is appealing the ALJ's finding of non-disability prior to October 29, 2010.

As to the ALJ's pre-October 29, 2010, finding of non-disability, the ALJ specifically found that Plaintiff had not engaged in any substantial gainful activity since her alleged onset date. Tr. 37. The ALJ found Plaintiff had the following severe impairments:

> status post left and right small finger extensor tendon repair with mallet finger correction and excision of dorsal osteophytes, status post laparoscopic cholecystectomy and ventral hernia repair, right shoulder rotator cuff tendinopathy, trochanteric bursitis, status post lumbar laminectomies and fusion between L4 and S1, seizure disorder, hypertension, type 2 diabetes mellitus, major depressive disorder, panic disorder.

Tr. 37–38. The ALJ next found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 38. Next, the ALJ made a finding as to Plaintiff's Residual Functional Capacity (RFC), which the Court examines at length below. Tr. 39–47; *see infra* Part IV.A–B. Finally, the ALJ found that while Plaintiff could not perform any of her past relevant work, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 47. Therefore, the ALJ found Plaintiff was not disabled under the Act.

Plaintiff appealed again, but this time the Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's second decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's]

request for review").

## II. FACTUAL BACKGROUND

According to her pleadings and testimony at the administrative hearing, Plaintiff was fifty-two years old at the time of her administrative hearing. She graduated high school and has past relevant work as a collection clerk, a skip tracer, and an apartment manager. Tr. 81–82. Plaintiff testified to a number of physical and mental impairments dating back years before her alleged onset of disability. In short, she alleges her impairments involve her "lower spine, upper spine, hip, shoulders, wrists, migraines, jaw, and abdomen." Pl.'s Br. 2. She also complains of seizures and depression. *Id.* Plaintiff claims her physical and mental impairments render her disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Plaintiff raises two issues on appeal before the Court. She claims the ALJ gave improper weight to the opinions of treating physician Brent Bunnell, M.D. She also argues the ALJ failed to

properly evaluate Plaintiff's credibility.

## A. Treating Physician Opinion

In considering whether a claimant is disabled, the Commissioner considers the medical evidence available, including medical opinions. *See* 20 C.F.R. § 404.1527(b). Medical opinions may come from treating sources (for example primary care physicians), non-treating sources (for example physicians who complete a single examination with the claimant), or non-examining sources (for example a physician who reviews only the claimant's paper record). *See generally* 20 C.F.R. §§ 404.1502, 416.902. Courts in this circuit "have long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). Even "[t]he treating physician's opinions, however, are far from conclusive. The ALJ has the sole responsibility for determining the claimant's disability status." *Id.*; *see Paul v. Shalala*, 29 F.3d 208, 2011 (5th Cir. 1994). When good cause is shown, an ALJ may assign little weight or even no weight to a treating source opinion. *Greenspan*, 38 F.3d at 237. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456. The regulations list factors which "an ALJ must consider to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to controlling weight." *Id.* (internal quotation marks omitted).[2] These factors include: examining relationship (as mentioned above—whether the medical opinion is from a

---

[2] The relevant factors are found in 20 C.F.R. §§ 404.1527 and 416.927. For ease of reference, the Court refers to them as the § 404.1527 factors.

treating source, non-treating source, or non-examining source); treating relationship (including length and frequency of treatment, as well as nature and extent of treatment); supportability; consistency; specialization; and other factors which support or contradict the opinion. *See id.* The ALJ must consider these factors because, as the Fifth Circuit Court of Appeals has stated, "[t]he ALJ cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000).

Though the ALJ must consider these factors, "*Newton* requires only that the ALJ 'consider' each of the [§ 404.1527] factors and articulate good reasons for its decision to accept or reject the treating physician's opinion. The ALJ need not *recite* each factor as a litany in every case." *Jeffcoat v. Astrue*, 2010 WL 1685825, at *3 (N.D. Tex. April 23, 2010) (internal citations and quotation marks omitted) (emphasis added).

Plaintiff alleges the ALJ incorrectly concluded Dr. Bunnell's opinions were based on Plaintiff's subjective complaints rather than medically acceptable clinical diagnostic techniques. Additionally, Plaintiff argues the ALJ failed to give Dr. Bunnell's opinions controlling weight, or in the alternative, the ALJ failed to analyze Dr. Bunnell's opinions under the § 404.1527 factors. Pl.'s Br. 17–23.

First and foremost, the Court notes a peculiarity in Plaintiff's argument as to Dr. Bunnell's "Multiple Impairment Questionnaire" dated April 1, 2011. Tr. 46–47. As previously noted, in earlier stages of Plaintiff's administrative process, Plaintiff was deemed disabled as of October 29, 2010. Tr. 46–47. Meaning, at the time Dr. Bunnell gave his April 2011 opinion that Plaintiff was disabled, it was also the position of the Commissioner that Plaintiff was disabled. Plaintiff does not assert that Dr. Bunnell's opinion was meant to diagnose an earlier version of Plaintiff, nor does Plaintiff explain how giving Dr. Bunnell's April 2011 opinion controlling weight would have

changed the outcome here.[3] That is to say, even assuming, *arguendo*, the ALJ erred both in stating

Dr. Bunnell's opinion was based on Plaintiff's subjective complaints, and in concluding that Dr.

Bunnell's opinion was not entitled to controlling weight, Plaintiff does not show how such errors

are not harmless errors. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (noting an error is

harmless when it does not "render the ALJ's determination unsupported by substantial evidence

and does not prejudice [the claimant's] substantive rights."). Had the ALJ given Dr. Bunnell's

April 1, 2011, opinion controlling weight and adjudged Plaintiff disabled on April 1, 2011, no

difference in outcome is apparent.

Second, Plaintiff argues even if the ALJ was justified in not giving Dr. Bunnell's opinions

controlling weight, the ALJ still must have applied the § 404.1527 factors. Pl.'s Br. 21. However,

the regulations and case law make plain a few things. First, some opinions of medical sources,

even treating sources, are not "medical opinions" within the meaning of the statute. Second, the

regulations and case law make plain that the § 404.1527 factors do not apply to medical test

findings or a claimant's subjective opinions. *See, e.g.*, *Frank v. Barnhart*, 326 F.3d 618, 620 (5th

Cir. 2003). Plaintiff does not point to any "medical opinions" from Dr. Bunnell from the relevant

time frame requiring analysis under the § 404.1527 factors. Nor does Plaintiff point to "medical

opinions" from other sources, despite her assertions to the contrary. *See* Pl.'s Br. 22 (citing opinion

given by Marvin Faulkner, M.D., that Plaintiff was physically disabled and opinion by Gerald

Stephenson, Ph.D., which vaguely concludes Plaintiff was mentally disabled). The opinions

Plaintiff highlights, that Plaintiff is "disabled," "are legal conclusions that the regulation describes

---

[3] This sort of backward projecting of a medical opinion does not pass muster, especially in the presence of extensive objective medical evidence that was collected and several medical opinions that were made during the period of time in question in this case—prior to October 29, 2010. Despite being Plaintiff's treating physician since 2003, Dr. Bunnell did not offer an opinion as to Plaintiff's ability to work until after Plaintiff had been adjudged disabled. Therefore, there is no other opinion of Dr. Bunnell's which the ALJ could have given controlling weight.

as 'reserved to the Commissioner.'" *Frank*, 326 F.3d at 620 (quoting 20 C.F.R. § 404.1527(d)(1)).

Third, even if evidence exists in the record that Plaintiff suffers from physical or mental impairments, Plaintiff must show more to receive a finding of disabled. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). "The mere presence of some impairments is not disabling per se. Plaintiff must show that she was so functionally impaired by her [infirmities] that she was precluded from engaging in any substantial gainful activity." *Id.* Plaintiff goes to great length to highlight evidence showing the presence of her physical and mental impairments. However, she fails to take the requisite step of showing these impairments render her unable to work. *See id.*; *see also Chaney v. Califano*, 588 F.2d 958 (5th Cir. 1979) (noting the test for disability under the Act is not satisfied merely because Plaintiff cannot work without some pain or discomfort).

As previously stated, the Court's review is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters*, 276 F.3d at 718. Defendant points to evidence in the record that the ALJ relied on to conclude that prior to October 29, 2010, Plaintiff retained the RFC to

> lift and carry a maximum of 10 pounds, stand/walk for a total of 2 hours in an 8 hour workday, and sit for a total of 6 hours in an 8 hour workday, with the option of alternating between sitting/standing for 2 minutes every 30 minutes. She is able to perform frequent stooping, crouching, and kneeling; frequent reaching with the dominant right upper extremity, but not overhead; no more than occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and no crawling. The claimant is precluded from performing work activities that require exposure to unprotected heights, open flames, moving machinery parts, or driving. She is limited to work activities that involve understanding, remembering, and carrying out 1-2 step instructions. The claimant retains the reasoning, mathematics and language skills to perform work with understanding and carrying out detailed but uninvolved written or oral instructions, detailing (*sic*) with problems involving concrete variables in or from standardized situations encountered on the job, performing basic arithmetic operations, and reading, writing, and speaking in simple sentences using normal word order (RML-211).

Tr. 39–40. In September 2006, state agency medical consultant Kavitha Reddy, M.D., assessed

8

Plaintiff and opined Plaintiff could occasionally lift and/or carry 10 pounds, and could stand and/or walk at least 2 hours in an 8-hour workday. Tr. 540. Plaintiff could occasionally climb ramps and stairs, and could occasionally balance, stoop, kneel, crouch, and crawl. Tr. 541. Plaintiff was limited in her ability to reach overhead, but could handle, finger, and feel without limit. Tr. 542. Finally, Plaintiff had no limits in terms of environmental limitations, such as working at heights, or with hazardous machinery. Tr. 543. Finally, Dr. Reddy opined that the limitations that Plaintiff alleged were "not fully supported by the [evidence of record]." Tr. 546.

In July 2008, another state agency medical consultant, Frederick Cremona, M.D., assessed Plaintiff and opined Plaintiff could occasionally lift and/or carry 10 pounds; frequently lift "slightly less than" 10 pounds; stand and/or walk for a total of at least 2 hours, and more like 4 hours, in an 8-hour workday; and sit about 6 hours in an 8-hour workday. Tr. 740. Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Tr. 741. Plaintiff was unlimited in her ability to reach, including overhead, and her ability to handle, finger, and feel. Tr. 742. Again, Plaintiff was unlimited in terms of environmental limitations, such as working at heights, or with hazardous machinery. Tr. 743. Like Dr. Reddy, Dr. Cremona opined that Plaintiff's complaints were only "partially supported by the [evidence of record]." Tr. 744.

Also in July 2008, a third state agency medical consultant, Leela Reddy, M.D., assessed Plaintiff, this time focusing on Plaintiff's mental impairments. Tr. 735–38. Dr. Leela Reddy opined Plaintiff was not significantly limited in her ability to either remember locations and work-like procedures, or to understand, remember, and carry out very short and simple instructions. Tr. 735. Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions. Tr. 735. Plaintiff was not significantly limited in the ability to sustain an ordinary routine without special supervision and the ability to make simple work-related decisions. Tr. 735–

36. Finally, Dr. Leela Reddy opined that Plaintiff was "able to understand, remember and carry out detailed but not complex instructions, concentrate for extended periods, interact with others, make decisions and respond to changes." Tr. 737. Just as Drs. Kavitha Reddy and Cremona had done, Dr. Leela Reddy opined that Plaintiff's allegations were "not wholly supported by the [evidence of record]." Tr. 737.

The findings and opinions of Drs. Cremona, Kavitha Reddy, and Leela Reddy constitute substantial evidence to support the ALJ's RFC finding, which adopted almost verbatim the evidence from these three medical experts. *Masterson*, 309 F.3d at 272; *Watson*, 288 F.3d at 215. Though evidence suggesting Plaintiff suffers a greater degree of impairment may exist on the record, it is not for the Court to reweigh that evidence against the evidence from Drs. Cremona, Kavitha Reddy, and Leela Reddy; that is the explicit province of the ALJ. *Masterson*, 309 F.3d at 272. Plaintiff's argument on this point does not persuade.

## B. Evaluating Plaintiff's Credibility

In determining a claimant's RFC, the regulations require the ALJ to first determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. Once that is determined, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *See generally* 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929. When statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by the objective medical evidence, the ALJ must make a credibility determination of the statements based on a consideration of the entire case record. The ALJ's credibility determination will include the following factors: a claimant's daily activities; the location, duration, frequency, and intensity of

a claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication a claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, a claimant has received; any measure a claimant has used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions caused by pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). "Failure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact of the truthfulness of the subjective symptoms and complaints requires reversal and remand." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (citing *Hayes v. Celebrezze*, 311 F.2d 648, 653–54 (5th Cir. 1963)); *see also* SSR 96-7p, 1996 WL 374186 (July 2, 1996) (The ALJ must "make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."). Nonetheless, the ALJ has discretion in making her credibility determinations, and "[h]ow much pain is disabling is a factual determination for the ALJ." *Adams v. Astrue*, 340 F.App'x 219, 221 (5th Cir. 2009) (unpublished) (*per curiam*); *see also Carrier v. Sullivan*, 944 F.2d 243 (5th Cir. 1991). An ALJ need not explicitly list each factor; instead what is required is findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p.

Here, the ALJ made findings that were sufficient under applicable statutory and case law. First, the ALJ spelled out the relevant legal standard. Tr. 40; *see Waters*, 276 F.3d at 718. After finding there was an underlying medically determinable physical or mental impairment that could be expected to produce pain or other symptoms, the ALJ conducted a detailed discussion which included consideration of the appropriate factors. Tr. 40–47.

Next, the ALJ discussed Plaintiff's activities of daily living. *See, e.g.*, Tr. 42 (noting

Plaintiff's testimony that she did not cook or do housework or yard work); Tr. 46 (noting that Plaintiff "was able to do her hobbies and to lead a productive life. Her activities included doing a craft show, taking a mini-vacation with her husband for Valentine's Day, painting, and making frequent trips to Michigan to stay with her mother after her mother was diagnosed with cancer.").

The ALJ discussed the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms. *See, e.g.*, Tr. 41 (noting complaints of "severe low back pain"); Tr. 42 (right shoulder and low back pain); Tr. 42 (pain radiating down both legs); Tr. 43 (neck and shoulder pain); Tr. 43 (thumb and bi-lateral little finger pain); Tr. 43 (abdominal pain); Tr. 44 (right lower abdomen pain); Tr. 44 (left hip pain); Tr. 45 (increased left hip pain); *see also* Tr. 44 (commenting on the duration of Plaintiff's treatment over several years).

The ALJ discussed precipitating and aggravating factors to Plaintiff's impairments. *See, e.g.*, Tr. 43 (noting Plaintiff's repeated admittance to hospitals for laparoscopic procedures); Tr. 44 (noting frequent falls, which contributed to Plaintiff's hip pain).

The ALJ discussed the type, dosage, effectiveness, and side effects of Plaintiff's medication. *See, e.g.*, Tr. 42 (noting that Plaintiff's blood pressure medication dosage had been increased); Tr. 44 (noting the use of antibiotics "for a probable seroma"); Tr. 45 (noting how Plaintiff's treating pain management specialist, Dr. Prevo, had to dismiss Plaintiff because she was improperly obtaining narcotic medication from other physicians).

The ALJ discussed treatment, other than medication, that Plaintiff had received, and measures Plaintiff used to relieve pain. *See, e.g.*, Tr. 45 (noting Plaintiff's request for and use of a walker without a seat, and a walker with a seat, to treat pain in her hips and back); Tr. 45 (obtaining narcotic medication surreptitiously from multiple physicians). In all, it is clear that the ALJ properly considered Plaintiff's credibility. The ALJ's discussion reveals she considered each of

the required factors.

The Court "by no means make[s] light of claimant's ailments, for it is clear that [she] suffers some disability," as the Commissioner has found. The Court is "convinced, however, that there is substantial evidence to support a finding that claimant did not suffer the sort of 'disability' for which benefits are available under the [Act]." *Chaney*, 588 F.2d at 960; *see Waters*, 276 F.3d at 718.

### V. CONCLUSION

In sum, Plaintiff makes two arguments on appeal before this Court. Neither is persuasive. Substantial evidence supports the ALJ's determinations in this case. *See Perales*, 402 U.S. 389. As such, the Commissioner's decision is conclusive and must be upheld. *Paul*, 29 F.3d at 210; *Newton*, 209 F.3d at 452.

Considering the foregoing, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the

aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge

that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass*

*v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED**.

Dated January _13_, 2016.

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**